## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **ETTORE SCASSA** | ) | **Civil Action/Case No. 3:14-CV-1099** |
| | ) | |
| | ) | |
| | ) | **Judge:** |
| **Plaintiff,** | ) | |
| | ) | **Magistrate Judge:** |
| **v.** | ) | |
| | ) | |
| | ) | |
| **VILLAGE OF PUT-IN-BAY;** | ) | |
| | ) | |
| **VILLAGE OF PUT-IN-BAY POLICE** | ) | |
| **DEPARTMENT;** | ) | |
| | ) | |
| **THOMAS ABRAM, individually;** | ) | |
| | ) | |
| **TYLER PIMENTAL individually;** | ) | **Complaint for Damages** |
| | ) | |
| **ZACHARY LAMOUR individually;** | ) | |
| | ) | **Jury Demand Endorsed Herein** |
| **DOMINIC WHITNEY individually;** | ) | |
| | ) | |
| **MATTHEW SANDELLA individually;** | ) | |
| | ) | |
| **TODD ROMANCE individually;** | ) | |
| | ) | |
| **ROBERT LAMPELA in his official** | ) | |
| **capacity and individually;** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## CIVIL RIGHTS COMPLAINT WITH DEMAND FOR TRIAL BY JURY

---

Plaintiff ETTORRE SCASSA, by and through his attorneys, The DeBacco Law Office hereby brings this action under 42 U.S.C. § 1983 to redress his civil and legal rights and alleges as follows:

## I: INTRODUCTION

1.    Each Paragraph in this Complaint incorporates all others.

2.    This is an action brought by Ettorre Scassa to vindicate profound deprivations of his constitutional rights caused by the use of excessive force and police brutality.

3.    On September 13, 2013, Plaintiff, then 46 years of age, was approached and engaged by Put-In-Bay Police while his son, friends and other family members were being investigated for potential Assault Charges that were completely unrelated to Plaintiff as he was not involved whatsoever with any Assault allegations.

4.    During the course of this interaction, Mr. Scassa without provocation or justification was not only beaten senselessly, he had his ear nearly ripped off, and was pepper-sprayed by approximately 7 Put-In-Bay Officers. The officers placed Mr. Scassa in handcuffs and continued to lean on him, punch and kick him, tearing on his ear, and continued to pepper spray him even though he was completely helpless and defenseless; rendering the Plaintiff temporarily blind and in immense pain.

5.    The individually sued Defendant officers assaulted Mr. Scassa with pepper spray, kicks, punches, tackles and bodyslams until he was rendered completely bloody and could barely breathe.

6.    Pictures exist that show Mr. Scassa's injuries nearly 24 hours after the beating as the Police Department took no pictures of the Defendant after what they had done. It is the Put-In-Bay Police Department's normal policy to do so, and they had done so

with the other Defendants that evening. Inexplicitly absent are pictures of Plaintiff. There is also video evidence of the extremely horrible shape Mr. Scassa was left in during his time in the cell. The video also shows police officers and EMS personnel gagging, choking, sneezing and running from the cell hours after the incident due to the immense amount of pepper spray and or mace utilized. Although typically there would be cruiser video of this incident, to Counsel's knowledge, curiously no such video exists.

7.      In concert or conspiracy, Defendants then maliciously charged Mr. Scassa with the serious offenses of Resisting Arrest, Obstruction of Official Business, Disorderly Conduct with Persistence and Disorderly Conduct Intoxication. All but one count was dismissed by the Ottawa County Prosecutor's office, as the Defendant plead no-contest to a Disorderly Conduct charge only as part of a package deal to get all Assault charges dismissed for his son Antonio; which occurred.

## II. JURISDICTION, VENUE, AND NOTICE

8.      This Action arises under 42 U.S.C. § 1983 and Ohio Law. This Court has Subject Matter Jurisdiction over this action pursuant to 28 U.S.C. § 1331, 1343(1) and (3) and This Court has subject matter jurisdiction over Plaintiff's pendent or supplemental state law claims under 28 U.S.C. § 1367.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) in that the unlawful actions or omissions challenged by Plaintiff took place and are challenged herein occurred in the Northern District and 28 U.S.C. § 1391 (c) as multiple parties and entities named herein are located or reside in the Northern District.

## III. PARTIES

3

10.     Plaintiff, Ettorre Sccassa brings this action in his individual capacity. At all relevant times, Plaintiff was a resident of the State of Ohio and a Citizen of the United States.

11.     At all times relevant hereto Defendant Thomas Abram was a citizen of the United States and a resident of the State of Ohio, and was acting under the color of State law in his capacity as a Put-In-Bay Police Officer and Agent employed by the Village of Put-In-Bay. Defendant Thomas Abram is being sued individually.

12.     At all times relevant hereto Defendant Tyler Pimental was a citizen of the United States and a resident of the State of Ohio, and was acting under the color of State law in his capacity as a Put-In-Bay Police Officer and Agent employed by the Village of Put-In-Bay. Defendant Tyler Pimental is being sued individually.

13.     At all times relevant hereto Defendant Zachary Lamour was a citizen of the United States and a resident of the State of Ohio, and was acting under the color of State law in his capacity as a Put-In-Bay Police Officer and Agent employed by the Village of Put-In-Bay. Defendant Zachary Lamour is being sued individually.

14.     At all times relevant hereto Defendant Dominic Whitney was a citizen of the United States and a resident of the State of Ohio, and was acting under the color of State law in his capacity as a Put-In-Bay Police Officer and Agent employed by the Village of Put-In-Bay. Defendant Dominic Whitney is being sued individually.

15.     At all times relevant hereto Defendant Matthew Sandella was a citizen of the United States and a resident of the State of Ohio, and was acting under the color of State law in his capacity as a Put-In-Bay Police Officer and Agent employed by the Village of Put-In-Bay. Defendant Matthew Sandella is being sued individually.

16. At all times relevant hereto Defendant Todd Romance was a citizen of the United States and a resident of the State of Ohio, and was acting under the color of State law in his capacity as a Put-In-Bay Police Officer and Agent employed by the Village of Put-In-Bay. Defendant Todd Romance is being sued individually.

17. Defendant, Village of Put-In-Bay, hereinafter "Defendant Village" is an Ohio municipality and is the legal entity responsible for itself and for the Put-In-Bay Police Department. The Defendant is also the employer of the individual Defendants and is a proper entity to be sued under 42 U.S.C. 1983. Defendant Village is responsible for actions under a respondeat superior theory. Liability under Ohio Law for all government entities and/or employees is based upon clear Ohio precedent and *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1245, 1246, 1248 (6th Cir. 1989) and based on the principles set forth in *Monell v. New York City Department of Social Services.* .

18. At all times relevant hereto, Defendant Robert Lampela was a citizen of the United States and a resident of the State of Ohio. Defendant Robert Lampela is sued individually and in his official capacity as the Chief of Police of the Put-In-Bay Police Department, employed by the Defendant Village and was acting under color of state law. On information and belief he also trained and supervised individual Defendants Abram, Pimental, Lamour, Whitney, Sandella, and Romance.

19. Defendant Village and Defendant Lampela are properly sued under 42 U.S.C. 1983 for their own and their delegated deliberately indifferent unconstitutional decisions, policies, practices, habits, customs, usages, training, and derelict supervision,

ratification, acquiescence, and intentional failures which were moving forces in the complained of constitutional and statutory violations resulting in plaintiff's injuries.

20. The Defendant Village is also properly sued under 42 U.S.C. 1983 for the challenged delegated final decisions of Defendant Robert Lampela in his official capacity as the Chief of the Put-In-Bay Police Department, and for those of any final delegated decision makers, with respect to the herein after challenged deliberately indifferent policies, decision, widespread habits, customs, usages and practices.


## IV. STATEMENT OF FACTS

21. Plaintiff incorporates all of the preceding paragraphs, including the allegations in the Introduction, as if they were full set forth again at this point.

22. At the time Plaintiff was accosted by Police, there was an alleged investigation into an Assault that did not involve Plaintiff, nor was there ever any question with regards to his complete lack of involvement. In fact, two others were charged with Assault, Trevor Lyne and Antonio Scassa. Antonio Scassa, the Plaintiff's son, had his case dismissed at the request of the State's Attorney; Trevor Lyne paid a waiver on a reduced charge of minor misdemeanor disorderly conduct at the request of the State.

23. Plaintiff had multiple family members from Italy visiting and present with him at the time of the incident and lost priceless time together due to the unwarranted beating and subsequent arrest of Plaintiff. These witnesses along with many others to be named later will testify to these facts.

24. Plaintiff merely approached and inquired of Defendants Lamour, Whitney and Abram what was happening with his Son, Antonio Scassa, and he was immediately shoved to

the ground by Defendant Lamour; by Lamour's own admission, he immediately put his hands on Plaintiff. Soon thereafter the Defendant got up: Defendants Abram and Lamour then body-slammed and pepper-sprayed the Plaintiff and again he laid on the ground in unbearable pain.

25.     Defendants Sandella, Pimental, and Romance then arrived on scene.

26.     Antonio Scassa and Trevor Lyne were arrested and charged with misdemeanor Assault for an unrelated incident.

27.     Defendants Lamour, Abram, Sandella, Whitney, Pimental and Romance then proceeded to brutally assault the Plaintiff. Plaintiff was again slammed to the ground while the Defendant officers continually punched, kicked and beat the Plaintiff while continually pepper-spraying him and nearly ripping his ear off; resulting in a severe laceration. Plaintiff can be heard screaming and begging the officers to please "get off" of his ear as it was being torn from his head. This beating and brutality was executed by the six Defendant Officers.  Countless full canisters of pepper spray were emptied onto the Plaintiff's face and directly into his ear laceration and eyes.

28.     In their angst to divert from liability for and to cover up their vicious attack on Plaintiff, and/or, on information or belief, Defendant officers next conspired and/or acted in concert to have the Defendant arrested and falsely prosecuted for charges he did not commit.

29.     Defendant was then unjustly handcuffed and arrested for Resisting Arrest, Obstruction of Justice, and two counts of Disorderly Conduct.

30.     Upon placing the Plaintiff in handcuffs and the ongoing beating of Plaintiff by six officers, the Defendant officers continually pepper sprayed the Plaintiff even after he

was handcuffed and secured. The Officers continued to brutalize the Plaintiff with pepper-spray by spraying it into the severed laceration of Plaintiff's ear.

31.     According to the Police Report this "arrest" took place at 12:02 A.M. The Defendant was transported to the Put-In Bay Police Department after being thrown into a cruiser. He was then cuffed to a bench in a cell where he begged for water or towels to wipe the blood and chemicals from his face; to no avail. Nearly thirty minutes past before Plaintiff received any treatment from EMS personnel where the Plaintiff sat and suffered chemical burns with absolutely no relief.

32.     Upon the arrival of EMS personnel it was documented that a "Strong, irritating presence of pepper spray" was in Plaintiff's cell and all surrounding areas.

33.     Booking Room and cell video footage shows multiple Officers and EMS personnel running out of the cell, gagging, choking, sneezing, and otherwise becoming ill due to the wildly excessive amount of pepper spray used on the Plaintiff. EMS aided Plaintiff in removing his bloody clothing as to try and alleviate some of the chemical stench for relief.

34.     EMS stated that Plaintiff's face and clothing was bloody, his eyes were watering and his face was red due to the chemical burn. EMS also noted the existence of but did not treat for a one and one half centimeter laceration that partially severed the Plaintiff's ear from his head. Plaintiff denied treatment of the ear due to the desire to avoid a life-flight from the island.

35.     Per normal protocol; pictures of injuries and cruiser videos with dash camera views exist and are used in Put-In-Bay Police arrests; in this case; there allegedly were none. There is audio of the assault but no video; pictures we not taken whatsoever.

36.     That same evening, pictures and video were taken in the cases of Trevor Lyne and Antonio Scassa, as well as other arrestees presumably.

37.     The Defendant received treatment to reattach his ear and was placed on antibiotics and pain medication upon leaving the village and attending the Emergency Room.

38.     All of the above-described acts were done by the Defendant's intentionally, knowingly, willfully, wantonly, maliciously and or recklessly in disregard for Plaintiff's federally protected rights, and were done pursuant to the preexisting and ongoing deliberately indifferent official custom, practice, decision, policy, training, and Supervision of the Defendant Village and Defendant Lampela acting under color of law.

39.     Defendants are seen and heard laughing throughout the entire process on the video in this matter.

40.     Emergency Medical personnel inquired as to why the Defendant officers used the extent of force they did on Plaintiff. These questions went unanswered.

41.     EMS attempted multiple times to clean his burns and flush his eyes to relieve his pain; to no avail.

42.     Mr. Scassa is not a large man. He is 5 feet, 9 inches tall and weighs 180 pounds. He is a man that is 45 years of age; it would not take six officers and six or more canisters of pepper spray or more to subdue Plaintiff as Defendants will likely state. There was no need to subdue the Plaintiff as he was not resisting and was otherwise acting totally within the law.

### V. PLAINTIFF'S INDIVIDUAL CAUSE OF ACTION- 42 U.S.C. § 1983 AS TO DEFENDANTS ABRAM, PIMENTAL, LAMOUR, ROMANCE, WHITNEY, AND SANDELA: EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS.

43.    Plaintiff hereby incorporates all other paragraphs of this complaint as if fully set forth herein.

44.    42 U.S.C. 1983 provides that: Every person, who under color of any statute, ordinance, regulation, custom, or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States of America or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress.

45.    Plaintiff in this action is a citizen of the United States of America and all of the individual Defendants to this claim are persons for purposes of 42 U.S.C. 1983.

46.    At all times relevant to this Complaint, Defendants Abram, Pimental, Lamour, Romance, Whitney, and Sandela were Village actors by virtue of their employment with the Village of Put-In-Bay.

47.    42 U.S.C. § 1983 provides that no person, acting under the color of state law shall deprive a citizen of his rights arising under the Constitution or federal laws. This

10

brutal beating constituted clear excessive force without justification against Plaintiff in violation of his Fourth and Fourteenth Amendment rights.

48.     As a United States Citizen, and later as an arrestee, Plaintiff Scassa was protected by the Fourth Amendment's protection against the use of excessive force.

49.     Under the Fourth Amendment, law enforcement officers may only use reasonable force, that is, the amount of force that is reasonable to protect officers from a perceived threat. At the time of the complained events, Plaintiff had clearly established his constitutional right under the Fourth Amendment to be secure in his person from unreasonable seizure through excessive force.

50.     Plaintiff had also clearly established his Constitutional right under the Fourteenth Amendment to bodily integrity and to be free from excessive force by law enforcement.

51.     The beating by *SIX* officers and the wildly excessive usage of pepper-spray by Defendants Abram, Pimental, Lamour, Romance, Whitney, and Sandela was a callous and gratuitous act(s) of brutality and violence that violated Plaintiff's Fourth Amendment right and Fourteenth Amendment right to be free from the use of excessive force. (emphasis added)

52.     As a direct and proximate result of the excessive force by Defendants Abram, Pimental, Lamour, Romance, Whitney, and Sandela, Plaintiff Scassa suffered compensable damages for physical pain and injuries, pain and suffering, severe emotional distress, fear, trauma, and humiliation; bruises and lacerations on his face and body, and tremendous reddening and burning of his skin from massive use of pepper spray. As well as a partially severed ear.

11

53. Plaintiff Scassa is also entitled to punitive damages and Attorney's fees because Defendants Abram, Pimental, Lamour, Romance, Whitney, and Sandela acted with willful, intentional, oppressive, purposeful, reckless, and callous indifference to Plaintiff's Fourth Amendment right to protection against the use of excessive force.

54. The acts or omissions of all individual Defendants were the only moving forces behind Plaintiff's injuries.

55. These individual Defendants acted in concert and joint effort with one another.

56. These individual Defendants knew or should have known of these rights at the time of the complained of conduct as they were clearly established.

57. These individual Defendants are not entitled to qualified immunity for the conduct complained of.

58. As a direct and legal result of the Defendants' acts and omissions, Plaintiff has suffered damages including, but not limited to, pain and suffering, extreme mental and emotion distress, severe physical injuries, medical expenses, attorney's fees, costs of suit, loss of earnings, and other pecuniary losses not yet identified.

**VI. PLAINTIFF'S INDIVIDUAL CAUSE OF ACTION- 42 U.S.C. 1983 AS TO DEFENDANT PUT-IN-BAY POLICE CHIEF ROBERT LAMPELA AND DEFENDANT PUT-IN-BAY POLICE DEPARTMENT: DELIBERATE INDIFFERENT POLICIES, PRACTICES CUSTOMS, TRAINING, SUPERVISION, IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS**

59. Plaintiff hereby incorporates all other paragraphs of this complaint as if fully set forth herein.

60. 42 U.S.C. 1983 provides that: Every person, who under color of any statute, ordinance, regulation, custom, or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States of America or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress.

61. Plaintiff in this action is a citizen of the United States of America and all of the individual Defendants to this claim are persons for purposes of 42 U.S.C. 1983.

62. Defendant Village of Put-in-Bay Police Chief Robert Lampela is a Village actor by virtue of his employment with the Put-In-Bay Police Department and is responsible - for all policy-making, training and supervision of Put-In-Bay Police Officers and in that capacity established policies, procedures, customs, and /or practices for the same.

63. The Defendant was at all times relevant hereto was acting under the color of state law.

64. Defendant, Put-in-Bay Police Chief Robert Lampela, developed and maintained policies, procedures, customs, and /or practices exhibiting deliberate indifference to the constitutional rights of citizens, in particular Plaintiff, which were moving forces behind and proximately caused the violations of Plaintiff's constitutional and federal rights as set forth herein and in the other claims, resulted from a conscious or

deliberate choice to follow a course of action differing from various available legal alternatives.

65. Defendant Lampela has created and tolerated an atmosphere of brutality and lawlessness, and has developed and maintained long-standing, department-wide procedures, customs, practices, and/or failed to properly train and/or supervise officers in an appropriate manner; amounting in deliberate indifference to the constitutional rights of Plaintiff and the public.

66. In light of the duties and responsibilities of those police officers that participate in arrests, investigations and preparation of police reports on alleged crimes, the need for specialized training and supervision is so blatantly obvious, and the inadequacy of training and supervision is so likely to, and has, resulted in the violation of constitutional rights and federal rights such as those described herein that the failure of Defendant Lampela to provide the proper training and supervision is deliberately indifferent to those rights.

67. The deliberately indifferent training and supervision provided or supervision not provided by Defendant Lampela resulted from a conscious or deliberate choice to follow a course of action differing from various available legal alternatives available to the Village of Put-In-Bay Police Department and were the moving force behind the injuries suffered by Plaintiff.

68. Defendant Lampela clearly acted with Deliberate and conscious indifference by his failure to train officers in the proper use of reasonable force and by ratifying the use of excessive and gratuitous force against Plaintiff while acting under the color of state law.

14

## VI. PLAINTIFF'S INDIVIDUAL CAUSE OF ACTION- 42 U.S.C. 1983 AS TO DEFENDANT THE VILLAGE OF PUT-IN-BAY AND DEFENDANT VILLAGE OF PUT-IN-BAY POLICE DEPARTMENT UNDER MONELL AND LEACH.

69.     Plaintiff hereby incorporates all other paragraphs of this complaint as if fully set forth herein.

70.     The Village of Put-In-Bay directly and proximately caused the constitutional violations suffered by Plaintiff, and is liable for the damages suffered by Plaintiff as a result of the conduct of all other named Defendants/Officers. The conduct of the defendant officers was a direct consequence of policies and practices of Defendant Village of Put-In-Bay.

71.     At all times relevant hereto the Village employed Defendant Officers who were acting under the color of law within the course and scope of their respective duties as Village Officers with complete authority and ratification of Defendant.

72.     At all times relevant to this complaint the Village of Put-In-Bay, acting through the Put-In-Bay Police Department, had in effect policies, practices, and customs that condoned and fostered the unconstitutional and illegal conduct of the individual Defendant's named in this complaint, and was a direct and proximate cause of the damages and injuries complained of herein.

73.     The Village of Put-In-Bay knew or should have known the Defendant officers' propensity to engage in misconduct of the type alleged herein. Upon information and

Belief, prior to the date complained of, the Village of Put-In-Bay was aware of years worth of several complaints of police misconduct, and other similar §1983 actions involving the use of excessive force and police brutality. Despite its knowledge of such incidents of prior misconduct, the Village of Put-In-Bay failed to take any remedial action.

74.    It was and is the policy and/or custom of the Village-of-Put-Bay to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated by the Village, including but not limited to, the incident listed in this complaint.

75.    Attorneys for the Village have been quoted as saying in a recent similar situation the following: island officials acknowledge "officers should have proceeded in a different fashion" and they need "additional training." These measures were not taken, multiple incidents of this sort of brutality have occurred since, including the vicious attack on Plaintiff. With an extremely high turnover rate regarding Village officers they may have never been trained at all regarding this type of misconduct; and it continues.

76.    It was the policy and/or custom of the Village to inadequately hire, train, supervise and discipline its police force, including the Defendant officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers. Upon information and belief the Village did not require appropriate in-service training or re-training of officers who were known to have engaged in misconduct.

77.    As a result of the above described policies and customs, police officers of the Village of Put-In-Bay, including the Defendant Officers, believed that their actions would not

16

be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated. This is a direct result of Defendant Chief Lampela, a Village employee, failure to supervise and the Villages failure to act upon that conduct.

78.    The wrongful policies, practices, customs, and/or usages complained of herein, demonstrated a deliberate indifference on the part of policymakers of the Village of Put-In-Bay to the constitutional rights of persons and visitors within the Village, and were the direct and proximate cause of the violations of Plaintiff's rights herein.

79.    The Policies, practices and actions of all named Defendant officers in their official capacities as employees of the Village and the Defendant officers' deliberate indifference in turn makes the Village liable for the injuries to Plaintiff. *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1245, 1246, 1248 (6th Cir. 1989).

80.    Based on the principles set forth in *Monell v. New York City Department of Social Services,* 436 U.S. 658 (1978), Village is liable for all injuries sustained by Plaintiff as set forth herein. Village bears liability because its policies, practices, customs, and/or usages complained of herein caused Plaintiff's injuries.

## VII. PLAINTIFF'S INDIVIDUAL CAUSE OF ACTION- 42 U.S.C. § 1983 AS TO ALL DEFENDANTS: MALICIOUS PROSECUTION OF PLAINTIFF.

81.    Plaintiff hereby incorporates all other paragraphs of this complaint as if fully set forth herein.

82.  At the time of the complained of events, Plaintiff had clearly established his constitutional right to be free from malicious prosecution without probable cause under the Fourth Amenddment and in violation of due process under the Fourteenth Amendment.

83.  Any reasonable police officer knew or shoulda have known of these rights at the time of the complained of conduct as they were clearly established at that time.

84.  Individual Defendants violated Plaintiff's  Fourth Amendment and Fourteenth Amendment rights to be free from malicious prosecution without probable cause and without due process when they worked in concert to secure false charges against him, which were later ratified and not corrected by Defendant Village or Defendant Chief Lampela, thus resulting in his unlawful confinement and prosecution.

85.  All Individual Officer Defendants conspired and/or acted in concert to institute, procure and continue a criminal proceeding for Resisiting Arrest, Obstructing Official Business, Disorderly Conduct with Persistence, and Disorderly Conduct Intoxication without evidence and probable cause only after they had brutally beaten Plaintiff.

86.  Defendants engaged in the conduct described by this complaint willfully, maliciously, and in bad faith, and in reckless disregard of Plaintiff's federally protected constitutional rights. Defendant's Chief Lampela and the Village of  Put-In-Bay accepted and ratified this conduct.

87.  The procurement of prosecution against Mr. Scassa for the known to be false allegations of Resisiting Arrest, Obstructing Official Business, Disorderly Conduct with Persistence, and Disorderly Conduct Intoxication were malicious, shocking, and

totally unreasonable in light of the Assault of Plaintiff followed by the continued Assault of Plaintiff.

88.     Those criminal proceedings resulted with the dismissal of the Resisiting Arrest, Obstructing Official Business, and Disorderly Conduct Intoxication charges, reflecting a prosecutorial judgment that these charges could not be proven beyond a reasonable doubt, if at all. Plaintiff plead no contest to the Disorderly Conduct with persistence charge only to vindicate his son, Antonio Scassa whose case was dismissed, as a package deal offered by the Ottawa County Prosecutors office. If the Defendant was at all disorderly; which he was not, it is a direct result of being immediately pushed down by officers and yelling and screaming while being beaten and blinded.

89.     Defendants are not entitled to qualified immunity for the conduct complained of herein.

90.     These individual Defendant Officers acted in concert and jointly with one another by creating these charges to cover their own bad acts.

91.     The acts or omissions described herein were also moving forces behind Plaintiff's injuries.

92.     The Defendant's to this claim at all times relevant hereto were acting pursuant to municipal/village custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in its actions regarding Plaintiff.


## VIII: PRAYER FOR RELIEF

Plaintiff prays that this Court enter judgment for the Plaintiff and against each of the Defendants and grant:

A.  Compensatory and consequential damages, including damages for emotional distress, loss of enjoyment of life, humiliation, loss of precious time with foreign family members, and other pain and suffering on all claims above, allowed by law in an amount to be determined at trial.

B.  Econominc losses on all claims allowed by law;

C.  Special damages in an amount to be determined at trial;

D.  Punitive Damages on all claims allowed by law against all Defendants, and individual Defendants in an amount to be determined at trial;

E.  Attorney's fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

F.  Pre and post judgment interest at the current lawful rate; and,

G.  Any further relief that this Court deems just and proper, and any other appropriate relief in law and equity.

**<u>PLAINTIFF REQUESTS A TRIAL BY JURY</u>**

/s/_____
Thomas J. DeBacco (0022931)
Debaccolaw@gmail.com
Trial Attorney for Plaintiff
Patrick L. Mancinetti II (0084514)
Kristopher K. Hill (0085514)
Associate Attorneys for Plaintiff
DeBacco Law Office
1848 East Perry Street Suite 90
Port Clinton, OH 43452
(419) 734-1528 Telephone
(419) 732-6103 Office Admin.

(866) 596-1073 Facsimile